[Civ. No. 2227. Fourth Appellate District.—June 28, 1938.]

H. F. SCHEEL et al., Respondents, v. P. W. HARR et al., Defendants; STANFORD PETROLEUM CORPORATION (a Corporation), Appellant.

Wild, Everts & Carlson and R. H. Reeve for Appellant.

Claflin, Dorsey & Campbell for Respondents.

HAINES, J., *pro tem.*—Respondents Scheel, in consideration of $10 and certain royalties reserved, entered on July 8, 1936, into an oil lease with one P. W. Harr and Edward C. White, affecting lands belonging to respondents in Kern County, and by its terms running for twenty years from its date "and so long thereafter as oil or gas or casinghead gas or other hydrocarbon substances, or either or any of them, is produced therefrom in quantities deemed paying by lessee". The lease was assigned by Harr and White to the Diane Company, a copartnership, and by it to appellant, Stanford Petroleum Corporation, of which White was the president and principal stockholder. The lease provided in paragraph "4" except in certain contingencies which have not occurred, that:

"This lease shall terminate as to all rights and obligations contained hereunder unless the Lessee shall on or before November 1st, 1936, commence the actual drilling and spudding in of a well for oil or gas on the above described land, and prosecute the drilling thereof with due diligence and dispatch until a depth of 5000 feet has been reached. . . . "

As is usual in documents of this description there are numerous other provisions and covenants. Thus, there are provisions for drilling additional wells in the event of discovering oil in the first; provisions covering the rights of the parties in the event of discovery of oil in paying quantities on adjacent lands; provisions suspending the lessees' obligation to pump in case the price of oil should fall below given figures, or to operate in case of strikes or other causes beyond lessees' reasonable control; provisions for the keeping by the lessees of proper records and making them available to the lessors; provisions reserving to the lessors the rights or surface grazing and requiring lessees to fence sump holes and other openings; provisions for the payment by the lessees of damages for injuries to stock, crops, trees, buildings, etc., from drilling operations, and for arbitration in the event of disagreement as to their amount; provisions forbidding drilling except under given conditions of wells within a certain distance of dwelling houses; provisions permitting lessees to quitclaim all or any part of the leased premises;

provisions for payment by lessees of certain taxes; provisions for surrender and quitclaiming of the property by the lessees upon the expiration of the term or other termination of the lease; provisions protecting the lessors against liens; provisions for warranty by the lessors of title; provisions for prorating royalties between the lessors and others who may be interested in the fee; provisions permitting either party to make assignments, defining drilling operations; providing the manner of making payments under the lease, and making the terms of the lease binding on the successors in interest of the original parties, and providing for the division of payments for damages to crops between the lessors and agricultural tenants, etc.

The paragraph numbered 18 of the lease which follows certain of these provisions and precedes others is to the effect that:

"Upon the violation of any of the terms or conditions of this lease by the Lessee and the failure to remedy the same within sixty days after written notice from the Lessor so to do, then, at the option of the Lessor, this lease shall forthwith cease and terminate, and all rights of the Lessee in and to said land be at an end, save and excepting as to any and all wells producing or being drilled and in respect to which Lessee shall not be in default, and saving and excepting rights-of-way necessary for Lessee's operations, provided, however, that the Lessee may at any time after such default, and upon payment of the sum of Ten Dollars ($10.00) to the Lessor as and for fixed and liquidated damages quitclaim to the Lessor all of the right, title and interest of Lessee in and to the leased lands in respect to which it has made default, and thereupon all rights and obligations of the parties hereto one to the other shall thereupon cease and terminate as to the premises quitclaimed."

The evidence shows that on July 9, 1936, respondents Scheel on the one hand, and said Harr and White on the other entered into a written escrow arrangement with the Bakersfield Abstract Company, the effect of which was that the Scheels placed the lease in escrow to be delivered to Harr and White when the abstract company could write a title guarantee showing title to the land to be in the condition agreed upon. Harr and White on their part placed in escrow a thousand dollars. The escrow arrangement pro-

vided that if, on or before November 1, 1936, the abstract company should be informed by affidavits of one Brown and one Oddous that the lessees or their assigns had actually "spudded in" a new well on the premises, then the thousand dollars should be returned to Harr and White, but if the affidavits of Brown and Oddous should state that neither the lessees nor their assigns had "spudded in" a well, then the thousand dollars should be paid to the Scheels.

Respondents, claiming that the terms of the lease had not been complied with, brought the present action to quiet title against Harr, White, one Cohen, who apparently had some connection with the lessees, and appellant Stanford Petroleum Corporation, on December 11, 1936, without undertaking as a prerequisite to proceed under the above-quoted paragraph 18 by serving any notice either on the lessees or appellant as their successor to proceed within the sixty days therein mentioned to perform the lessees' part of the agreement.

After answer filed the case was tried and the court found upon sufficient evidence that prior to the first day of November, 1936, appellant corporation erected an oil well derrick on the leased land and installed an incomplete drilling rig thereon and with such rig on November 1, 1936, drilled to a depth of 26 feet only, and thereafter, on or about November 5, 1936, removed from said derrick the drilling equipment and has never resumed drilling on said land; that such drilling by appellant corporation was not in good faith, but was done for the purpose of securing the release from escrow of the above-mentioned one thousand dollars. The court concluded as a matter of law that for noncompliance with paragraph 4 of the lease the latter was terminated and respondents entitled to have their title quieted as against the defendants in the action, including the appellant corporation. Judgment was entered accordingly and the present appeal followed.

The only question before us is whether or not respondents were required, as a prerequisite to commencing this action to quiet title, to give to appellant as the holder of the lease a notice under the above-quoted provisions of paragraph 18 thereafter to perform its terms, and thereupon, before proceeding further, to allow it sixty days in which to do so. On appellant's part the claim is that the lease had gone into effect, and any failure on appellant's part in its performance

would amount at the most to a condition subsequent and terminate it only in the circumstances contemplated by the said paragraph 18, that is, the failure to perform within sixty days after notice of default given. Respondents take the position that appellant, never having in good faith commenced operations, as required, a condition precedent to the effectiveness of the lease failed of performance; that in any event the above-quoted language of paragraph 4 provides for the termination of the lease *ipso facto* upon noncompliance with an essential condition, whereas the provisions of paragraph 18 above referred to provide merely for an optional forfeiture for breach of subordinate covenants; that the more specific provisions of paragraph 4 control the more general provisions of paragraph 18; that appellant's default of itself terminated whatever rights appellant might have had under the lease; and that it was competent to begin and prosecute the present action without the service of any notice; in addition to which it is claimed that appellant has effectually abandoned the leased premises and for that further reason can assert no rights under the lease.

We are unable to agree that the above-quoted language from paragraph 4 of the lease creates any condition precedent to its becoming effectual. No condition precedent is there expressed. What the paragraph does say is that the lessees' failure to comply with its requirements shall "terminate" the lease. That is language appropriate not to a condition precedent but to a condition subsequent. Neither can we agree that the language quoted from paragraph 4 controls that quoted from paragraph 18. It seems to us that the contrary is true. So far as the actual "spudding in" of the well was concerned, there is no question that it was done within the time which the lease contemplated. As said in *Solberg* v. *Sunburst Oil & Gas Co.*, 73 Mont. 94 [235 Pac. 761–763]:

"The phrase 'spudded in', as employed and understood by oil operators, denotes the first abrasion of the soil by the drill, or that of first entrance of the drill into the ground." (Citing Morrison-DeSoto Oil & Gas Rights, p. 978.)

The further requirements of paragraph 4 were that the lessee should prosecute the drilling with due diligence and dispatch until a depth of 5,000 feet should have been reached, etc., and it is that which was not done. This was not some-

thing that had, under the terms of the lease, to be done on or before any particular date. It was something that, in any circumstances, would require some time. In view of the necessity of reading paragraphs 4 and 18 together, and of the unqualified language of section 18, as respects its requirement of the 60-day notice to perform, to be given to the lessees in the event of their default, as a prerequisite to the termination of the latters' rights, we think that at least after drilling had once commenced, the well been "spudded in", and thereby the only condition subsequent tied to any stated date had ceased to figure in the case, the provisions of section 4 having to do with the termination of the lease if the work were not diligently prosecuted, were as much subject to the requirement of the 60-day notice to perform as any other terms or conditions contained in the instrument.

We think there is a distinction between the grounds for termination of the lessees' rights and the method prescribed for effectuating such termination, and that as between general and specific provisions, paragraph 18 is, as to the method of effectuating the termination, at least after the acts specified as to be done on or before November 1, 1936, had once been done, the only specific provision to be applied, and that it must therefore control. We find nothing in paragraph 18 excepting defaults accruing under paragraph 4 from its requirements.

Not only, as we have said, is there nothing in paragraph 4 of the lease in the nature of a condition precedent to the effectiveness of the instrument, but it cannot, so far as we can see, be claimed that for any other reason the right of the lessees to proceed under it did not come into initial effect. While, upon being signed, it was left in escrow, yet no other condition was attached to the right of the lessees to receive delivery of it from the escrow holder than that the latter should be able to write the contemplated guarantee of title, and there is no claim that this could not be done. The right of the lessees to the lease was in no way conditioned on the disposition of the thousand dollars deposited by them with the abstract company.

Contrary to the earlier views expressed in *Brookshire Oil Co.* v. *Casmalia etc. Co.*, 156 Cal. 211, 215 [103 Pac. 927], it is laid down in *Callahan* v. *Martin,* 3 Cal. (2d) 110, 122 [43 Pac. (2d) 788, 101 A. L. R. 871], that:

"Under the usual oil and gas lease the owner-lessor transfers to his lessee the right to drill for and produce oil and other substances. The rights of the lessee present a clear case of a *profit à prendre* in gross, a right to remove a part of the substance of the land. If the oil and gas lessee is not granted exclusive possession of the surface by the terms of the lease, he has nevertheless a right to such possession as is necessary and convenient for the exercise of the profit, which, in fact, may preclude any other surface possession. This *profit à prendre* vests in the lessee an incorporeal hereditament, a present estate, an interest in land, which is a chattel real if it is to endure for years."

To the same effect is *Dabney-Johnston Oil Corp.* v. *Walden*, 4 Cal. (2d) 637 [52 Pac. (2d) 237], and *Dabney* v. *Edwards*, 5 Cal. (2d) 1 [53 Pac. (2d) 962, 103 A. L. R. 822]. In the last-mentioned case, in discussing a lease, which, like the one in the case before us, was made for a fixed time and "so long thereafter as gas or, oil or either of said substances is produced therefrom in sufficient quantities to pay to pump, or otherwise to secure and save . . . ", the court held the right vested in the lessee to amount to a freehold estate in the nature of a determinable fee (p. 12) and said (pp. 14, 15):

"The doctrine that the lessee's interest is inchoate and does not vest until the discovery or production of oil or gas was expressly repudiated in the recent case of *Callahan* v. *Martin*, 3 Cal. (2d) 110 [43 Pac. (2d) 788, 101 A. L. R. 871]. It is true that the *physical power* to produce oil or gas does not come into being until the time that a well is drilled and oil or gas is obtained therefrom, but the right or privilege to produce undoubtedly vests upon the execution of the lease."

It must then be considered and held that, in general, the execution of an oil lease of the description commonly in use immediately invests the lessee with an interest in the land, whether, according to the terms of the lease, the interest amount only to a chattel real or be in itself real estate.

With these principles in mind, then, we are brought to consider the effect of the trial court's finding that such operations as appellant did conduct on the premises involved, were not in good faith. Where no substantial cash requirements are involved the courts have said, as indeed must be the case, that the real consideration for an oil lease is the

right therein contained for the lessor to profit from the exploitation of the mineral resources of the property, in fine, his right to have the effort to find and produce oil proceed and in some sort to share in the benefits consequent on its being, if possible, found and produced. (*Caswell* v. *Gardner*, 12 Cal. App. (2d) 597, 601 [55 Pac. (2d) 1222], quoting *Hall* v. *Augur*, 82 Cal. App. 594 [256 Pac. 232].)

It may then for the purposes of this decision be assumed that the court's finding that appellant's operations were not in good faith is tantamount to a finding both that the appellant was guilty of fraud, and further that the consideration running to respondent for the lease, has, by reason of appellant's breach, failed. But even though all this be true, it does not seem to us to dispense with the requirement of paragraph 18 that the 60-day notice be given as a prerequisite to making effective the termination of the lessees' rights.

An instrument procured by fraud is not a void instrument; neither does the failure of consideration render a transaction a nullity from the beginning. Fraud, if perpetrated in its inception is a ground for rescinding a contract and the failure of consideration is a ground for either rescinding or terminating a contract, according to circumstances, but until rescinded or terminated a contract once in effect remains in effect. In the instant case there has been no attempt to rescind and respondent has chosen not to follow the method of effectuating a termination prescribed by the language quoted from paragraph 18.

It is true that in the present case, by reason of the privilege reserved to the lessee to quitclaim at any time, the instrument here involved lacks mutuality and its specific performance could not, therefore, be enforced (Civil Code, sec. 3386; *Sturgis* v. *Galindo*, 59 Cal. 28 [43 Am. Rep. 239]; *Dabney* v. *Key*, 57 Cal. App. 762 [207 Pac. 921]; *Sheehan* v. *Vedder*, 108 Cal. App. 419 [292 Pac. 175]; *George* v. *Weston*, 26 Cal. App. (2d) 256 [79 Pac. (2d) 110]).

In that aspect we agree that the document here involved is not analagous to a lease in the ordinary sense, but to an option; that is to say that it is so far unilateral that it could be at any time terminated by the lessees or be now terminated by appellant as their successor in interest. But even an option, when supported by any consideration at all— and this recites one of $10—can only be terminated by expira-

tion of the time for which it is given or otherwise in accordance with its terms.

With respect to the suggestion that appellant has abandoned the premises it is our opinion that the evidence is insufficient to justify that construction of the appellant's conduct. (*Utt* v. *Frey,* 106 Cal. 392 [39 Pac. 807] ; *Herbert* v. *Graham,* 72 Cal. App. 314 [237 Pac. 58].)

Since in the instant case respondents have taken no appropriate measures for effectuating the termination of appellant's rights, their present action is in our opinion premature and for that reason the judgment is reversed.

Barnard, P. J., and Marks, J., concurred.