[Civ. No. 13982.   Second Dist., Div. One.   May 25, 1943.]

ALEXANDER ROMERO et al., Respondents, v. CURTIS I. BREWER et al., Appellants.

Joseph A. Ball, Louis N. Whealton and Kenneth Sperry for Appellants.

John A. Galvin and Henry L. Knoop for Respondents.

DRAPEAU, J. pro tem.—The two plaintiffs in this case are father and son. They are owners of some 480 acres of land located in a mountainous section of Los Angeles County near the city of Newhall. While the nature of plaintiffs' ownership is not essential to this decision, it may be said that the father secured title to the property under the homestead laws of the United States, and thereafter by deed conveyed it to his son in consideration of promises by the son to support the father, to pay the expenses of his burial, and to permit him during his lifetime to live upon the property.

September 13, 1937, the plaintiffs as lessors entered into an oil lease with four individuals named therein as lessees. Three of these individuals quitclaimed to the plaintiffs all of their right, title, and interest in the land involved, and are not parties to the pending litigation. The fourth lessee, and his wife, are the parties defendant.

Such covenants and agreements in the lease as are necessary to an understanding of the issues involved are as follows:

1. The lessees are granted the right to drill, operate, develop and remove petroleum and its products from the demised premises, together with necessary rights of way, and necessary water to be developed by the lessees.

2. The lessees covenant to "commence drilling or operations for sinking a well" within — days. In reducing the agreement to writing the parties used a printed oil lease form, which has been designated in one of the briefs as a "Store lease." Some of the blanks in the form were filled in, others were not, and the drilling covenant was left blank

as to time. However, there is testimony in the record which will support the conclusion that the lessees agreed to commence drilling, or operations for sinking a well, within ninety days from the date of the lease.

3. If oil in paying quantities was not obtained within twelve months, the lease was to be cancelled and surrendered to the lessors.

4. Upon failure of the lessees to comply fully and fairly with each of the conditions of the lease "sixty days after notice in writing so to do" by the lessor to the lessee, all rights thereunder are to terminate and be forfeited.

5. The term is five years from the date thereof, "to be extended from term to term," with the right to retain producing wells 20 years from date of expiration of the lease.

Upon the delivery of the lease, the lessees went into possession of the leased premises. During 1938 they built between 300 and 400 yards of roadway, and hauled some second-hand machinery and equipment upon the lease and to a point approximately one-quarter mile away from a proposed drilling site; but such machinery and equipment were wholly inadequate to drill either a water well or an oil well, and of no substantial value. During the summer of 1938 the lessees hauled to the drilling site some miscellaneous pieces of used lumber to be used to build a derrick. In February, 1939, the lessees obtained from the Board of Public Works of the County of Los Angeles a permit to build a derrick.

There was no water on the land, an adequate supply of water was essential for oil-drilling purposes, but lessees never commenced a water well. No permit was obtained from the State Mining Bureau to drill an oil well upon the premises; no derrick was ever erected; no oil well was ever drilled or commenced; and no oil was obtained in any quantity. Since March, 1939, no lessee did, or attempted to do, anything by way of performance of any covenant or condition in the lease. The complaint was filed February 24, 1941.

The trial court found that the lease had been abandoned and judgment followed quieting title in the plaintiffs.

From this judgment defendants' lessees have appealed. They contend that (1) the evidence is insufficient to support the finding of abandonment; and (2) in any event written notice of default and demand for compliance was necessary to determine the interest in the real property acquired by the defendants under the lease.

■ There is substantial evidence to support the finding of the fact of abandonment. There was testimony to the effect, and appellants' brief argues the point, that one of the plaintiffs ordered the lessees off the land, and would not permit them to continue work under the lease. There was testimony to the contrary, and on this issue the trial court found against the defendants.

■ The second contention may be summarized as follows: The lease contained a clause providing that before lessees' rights could be forfeited, sixty days' notice in writing of the failure on their part to comply fully and fairly with any of the terms of the lease was to be given to them by lessors. It was stipulated at the trial, and the court found, that no notice was given by lessors to lessees of any default. This being the case, defendants argue that the execution of the lease immediately vested in them an interest in the land which could not, as a matter of law, be abandoned; that legal title to a corporeal hereditament cannot be abandoned. (1 C.J. 10; *Kern County Land Co.* v. *Nighbert,* 75 Cal.App. 103 [241 P. 915]; *Foss* v. *Central Pacific Railroad Co.,* 9 Cal.App.2d 117 [49 P.2d 292].)

This contention earnestly presented calls for at least some detailed consideration. It is to be remembered that in the lease there was a covenant to commence drilling an oil well within ninety days from its date, which concededly was not performed by the lessee. There was also a covenant to produce oil in paying quantities within one year from the date of the lease, which also concededly was not performed by the lessee. Notwithstanding the violation of these covenants, it is contended *that because of the estate created by the lease itself,* there is only one way in which lessors may quiet their title; i.e. by giving the lessee written notice of default of the terms of the lease and an opportunity for sixty days thereafter to correct the same.

For a determination of this question fortunately there is a good point of beginning in *Callahan* v. *Martin,* 3 Cal.2d 110 [43 P.2d 788, 101 A.L.R. 871]. Whatever the law of California may have been before, that case settled the status of the estate granted by an oil lease. This is concisely defined at page 122 of the reported decision: "This profit *a prendre* vests in the lessee an incorporeal hereditament, a present estate, an interest in the land, which is a chattel real if it is to endure for years."

The lease here in question by its terms is to endure for years. Therefore, it is a chattel real, an incorporeal hereditament, and the real property rule as to abandonment of corporeal hereditaments is not applicable to it. This conclusion is supported by the recent case of *La Laguna Ranch Co.* v. *Dodge,* 18 Cal.2d 132 [114 P.2d 351, 135 A.L.R. 546]. In that case our Supreme Court held that the lessee of an oil lease who had granted to third persons over-riding royalties could terminate the estate of such grantees by quitclaiming the lease—a view which is directly opposed to the theory of ownership advanced by defendants in this case.

Abandonment of oil leases by lessees has been approved, either tacitly or by direct holding in all the California cases in which the subject has been under consideration.

The text in 8 Cal.Jur. Ten-year Supp. 733 (and see cases cited in the footnotes) states the rule:

"Abandonment.—While a fee-simple title to real property cannot be lost by abandonment, it seems to be settled that title to an oil and gas leasehold may be lost in that way. As one of our appellate courts has observed, 'Such a lease may be abandoned, and when once abandoned by the lessee, he cannot thereafter claim or enforce any right thereunder without first securing the consent of the lessor or a renewal of the lease.' But of course nonuser alone does not constitute an abandonment. In order that there be an abandonment, there must be an intention to abandon; and while such an intention may be inferred from the facts and circumstances of the case, mere inactivity, without more, is a wholly insufficient basis for any such inference."

And "Abandonment will be more readily found in the case of oil and gas leases than in most other instances." (*Hall* v. *Augur,* 82 Cal.App. 594 [256 P. 232].)

These principles are supported by the recent cases of *Rice* v. *Lee,* 44 Cal.App.2d 909 [113 P.2d 235], and *Rehart* v. *Klossner,* 48 Cal.App.2d 40 [119 P.2d 145]. In the latter case the authorities are cited, considered, and applied.

The purpose of the notice clause to protect lessees from forfeiture of oil leases is well known and understood in the oil industry. It is for the benefit of the lessee who in good faith goes forward in compliance with the terms of his lease. For instance, it would be mainfestly unjust and unfair to forfeit the leasehold interest of such a lessee because of some default in the terms of the lease suffered or

permitted by his agents or employees and without his knowledge, especially upon the discovery of oil and gas in paying quantities upon the leased premises. It would be equally unjust to allow a lessee who has been in default in the major covenants of an oil lease to the extent that they show abandonment, to insist, as a matter of law, that under all circumstances such a notice must be given. Such construction of its effect would inevitably, finally defeat the purpose of the notice clause and the protection which it gives the bona fide lessee.

To avoid the injustice in the latter instance, in *Stetson* v. *Orland Oil Syndicate, Ltd.*, 42 Cal.App.2d 139 [108 P.2d 463] at page 142, the District Court of Appeal held that upon the failure to drill a well the lease terminated by its own terms; and, in any event, that notice was waived when the lessees contested the plaintiffs' quiet title action upon the theory that they were not in default under the terms of the lease. (Also see *Calhoma Oil Corp.* v. *Conniff*, 207 Cal. 648 [279 P. 771].) To avoid the injustice in the first instance, in such cases as *Scheel* v. *Harr*, 27 Cal.App.2d 345 [80 P.2d 1035] and *Sandrini* v. *Branch*, 32 Cal.App.2d 707 [90 P.2d 593], where the lessee had in good faith commenced drilling and had made a considerable investment, it was held that the lessee was entitled to the protection of the notice clause.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 22, 1943.