[Civ. No. 19045. First Dist., Div. Two. July 19, 1960.]

VALER OIL COMPANY (a Corporation), Plaintiff and Appellant, v. MANUEL V. SOUZA, JR., as Executor, etc., Respondent; O. E. REEVES et al., Cross-Defendants and Appellants.

LENA SOUZA et al., Respondents, v. O. E. REEVES et al., Appellants.

NORMAN SOUZA et al., Respondents, v. O. E. REEVES et al., Appellants.

John W. Preston, Jr., and Joan H. Martin for Appellants.

Everett S. Layman, Sr., and Everett S. Layman, Jr., for Respondents.

KAUFMAN, P. J.—This is an appeal from three judgments, in separate actions consolidated for trial, quieting the title of the respondents to certain real property in San Mateo County, awarding them damages and attorneys' fees for slander of title, and decreeing that four oil and gas leases had terminated. The various respondents are the lessors; the various appellants are the lessees and their assignees. Although there are certain variations in the facts and contentions relating to each of the leases, the basic question raised by this appeal is whether the trial court correctly concluded that the rights of the appellants under the leases had been terminated.

The first of the leases, dated January 17, 1954, was between Manuel V. Souza, Sr., as Lessor, and O. E. Reeves, as lessee, and had a primary term of one year beginning January 17, 1954. Manuel V. Souza, Sr. died before the trial and Manuel V. Souza, Jr., as executor of the will, was substituted in his place. The second lease, dated January 11, 1955, was also between Manuel Souza, Sr., as lessor, and Reeves, as lessee, and had a primary term of one year, beginning January 18, 1955. The third lease, dated June 7, 1955, was from Norman and Margaret Souza as lessors to Reeves as lessee, and had a

primary term of one year from June 7, 1955. The fourth lease, dated June 27, 1955, was from Lena Souza, John Souza, Norman Souza, Esther Souza Bernardo, and Helen Bolls as lessors and Reeves as lessee, and had a primary term of one year from June 27, 1955. The 1954 and 1955 leases from Manuel Souza, Senior, covered the same 710 acres of land in San Mateo County; the other two leases were for contiguous property. The provisions of each of the leases which are in issue here, were substantially identical. The 1954 Manuel Souza lease, and the Norman Souza lease contained a habendum clause which provided that the lessee was "to have and to hold the same for a term of *one* (1) years from and after the date thereof and so long thereafter as oil or gas, or casinghead gas, or other hydrocarbon substances, or either or any of them, is produced therefrom, *in paying quantities and subject to all the terms and provisions hereof.*" The italicized portion was typewritten. The habendum clause of the Lena Souza lease was identical except that it did not contain the typewritten portion. In the 1955 Manuel Souza lease, the words "from and after the date hereof" have been crossed out and the words "commencing as of date, January 18, 1955" inserted.

Each of the leases contained a covenant against assignment which read as follows:

"(31) That it is expressly understood and agreed by and between the Lessor and Lessee that the Lessee may not, and shall not, without the written consent and approval of the Lessor being first had and obtained, assign, transfer or convey this lease in whole or in part, or his interest therein and thereunder, or in the oil and/or gas therein or produced therefrom, provided however in such connection it is further understood and agreed that the right and privilege is hereby given Lessee to make one transfer or assignment of this lease to a corporation in the process of formation the principal shareholders of which shall include Lessee and associates interested in the oil and gas operations authorized under the terms of this lease."

Paragraph 29 of each lease provided that all its terms and conditions and stipulations shall extend to and be binding upon the heirs, executors, administrators, grantees, successors and assigns of the parties.

Except for variations as to the date and amount of rental, Paragraph 5 of each of the leases provided:

"(5) Lessee had paid to Lessor rental in full hereunder, in advance, for the period of one (1) year ending January 17th, 1955; Lessee shall further pay to Lessor rental at the rate of

$2130.00 per year, in advance, commencing upon the date last above written and payable thereafter in advance yearly as long as this lease shall remain in force and effect. Provided, however, with respect to payments above referred to and made hereunder after the expiration of the period ending one year from the date of this lease, Lessee shall have the right to reimburse himself out of royalties which shall thereafter become payable hereunder to Lessor, it being the intention hereby that after the expiration of said period above stated and after and upon production of oil or gas upon said leased premises, the annual advance payment of $2130.00 shall be in the nature of a guaranteed minimum royalty.

"All rentals paid hereunder shall not be refundable, it being the intent and understanding hereby that upon payment of such rental in advance, and except for allowance of royalty deduction hereinabove authorized, that Lessor be guaranteed the full one year term rental as provided above when paid upon the commencement of each new term hereunder.

"This lease shall terminate as to all rights and obligations created hereby unless Lessee shall within said [1]period of one (1) year ending January 17th, 1956, commence drilling operations for a well for oil or gas upon said leased premises, and prosecute the drilling of such well with reasonable diligence until oil or gas is found and produced in quantities deemed paying by Lessee or until Lessee deems further drilling would be unprofitable or impracticable in which event Lessee may abandon said well.

"In the event of abandonment of any well prior to the discovery of oil or gas upon said land in quantities deemed paying by Lessee, this lease shall nevertheless continue in force and effect if within one hundred and twenty (120) days thereafter Lessee shall commence drilling operations for a new well for oil or gas on said land and thereafter prosecute the same diligently as above provided and, in the event of abandonment thereof, continue the drilling of wells in like manner and within like intervals until oil or gas is discovered on said land in quantities deemed paying by Lessee, or until this lease is terminated. Provided, however, that if at any time during the period of One (1) year from the date hereof, ending January 17, 1956, and prior to the discovery of oil or gas upon the leased premises in quantities deemed paying by Lessee, Lessee

---

[1]The Manuel Souza leases and the Lena Souza lease were to terminate in one year, while the Norman Souza lease was to terminate 6 months from date of execution.

shall cease drilling operations on the leased land, as above set forth, the Lessees may defer the commencement of further drilling operations, except for off-set wells, during such period for which rental upon said land has been prepaid; however, all off-set wells must be drilled during such period as are required hereunder.''

Paragraph 7 of each of the leases stated:

''If the Lessee shall elect to drill on said land, as aforesaid, and oil or gas shall not be obtained in paying quantities in first well drilled, the Lessee shall, within 120 days (120) days after the completion or abandonment of the first well, commence on said land drilling operations for a second well, and shall prosecute the same with reasonable diligence until oil or gas is found in paying quantities, or until the well is drilled to a depth at which further drilling would, in the judgment of the Lessee, be unprofitable; and the Lessee shall in like manner continue its operations until oil or gas in paying quantities is found, but subject always to the terms and conditions hereof and with the rights and privileges to the Lessee herein given.''

The uncontroverted evidence shows that about June 7, 1955, Empire Drilling Co.[2] under an agreement with Reef Oil Company began the drilling of a well known as Reef-Souza Number 1 on the land subject to the two Manuel Souza leases. Reef Oil Company was a general partnership consisting of the lessee Reeves and one Wooten and Hansford. Wooten and Hansford have abandoned their appeal from the judgments against them. Not later than July 31, 1955, the well produced water and traces of oil, but no work was done on it after October 1, 1955. It is uncontroverted that there was no production of oil or gas or other hydrocarbons in paying quantities on January 17, 1956, or at any time. After the drilling, the surface condition was left in a general state of disrepair and the location was not adequately fenced to keep cattle out.

The 1954 Manuel Souza lease was a partnership asset of Reef Oil Company. Although they knew this lease had expired, Reeves and his wife assigned this lease to Valer Oil Company by a quitclaim deed dated August 6, 1957, and recorded August 21, 1957. Valer Oil Company was an operating company incorporated in February, 1956; Reeves held one of its 24 outstanding shares. A formal demand for the surrender and quitclaim of the 1954 lease was made in March, 1958.

The 1955 Manuel Souza lease was transferred several times

<hr>

[2]Empire was originally one of the parties but a dismissal was entered at the beginning of the trial.

as follows: By an instrument dated December 15, 1955, Reeves transferred the lease to Amalgamated Oil Company[3] and Reef Oil Company. On February 9, 1956, a document was recorded which purported to quitclaim Amalgamated's interest in the lease to Reeves. A partial interest was transferred by Reeves to one L. A. Thomson,[3] pursuant to an agreement dated June 3, 1955. On February 8, 1956, Reeves transferred his interest to Valer. On July 8, 1957, Reef Oil Company transferred its interest to Valer.

About February 18, 1956, Manuel Souza, Sr., received in the mail the personal check of one Thomas M. Blake for $2,130 as a rental under the 1955 lease. Blake was the owner of 20 of the 24 shares of Valer. This check was returned to the sender. Early the next month, Manuel Souza, Sr. received a letter from one of the attorneys for the appellants, enclosing a cashier's check for $2,130 for the same purpose. This check was never accepted or presented for payment. As early as May 25, 1956, a return of the cashier's check was offered but has never been accepted. On January 10, 1957, formal demand for the surrender and quitclaim of decedent's 1955 lease was made. On February 15, 1957, Valer Oil Company brought an action for specific performance of the two Manuel Souza leases against the decedent. Pursuant to stipulation, a nonsuit was granted as to this action on the opening of the trial of the consolidated actions.

The Norman Souza lease was transferred by the lessee Reeves to Reef Oil Company by an instrument dated October 4, 1955. Reef Oil Company thereafter transferred an undivided 85% to W. L. Golding, by an instrument dated October 4, 1955, and recorded August 31, 1956. In December, 1955, a well known as Yates-Thunderbolt Number 1 was drilled on the land subject to Norman's lease. This well was plugged and abandoned on December 11, 1955, and there has been no drilling or development activity since. The oil sumps were left open and the site was not restored to its original level. In November, 1956, formal demand for the surrender and quitclaim of Norman's lease was given and demand was made on the lessee to fill in the sump holes and excavations, and to grade and level the area and clean up the debris resulting from the drilling.

As to the Lena Souza lease, the uncontroverted evidence shows that no well was ever drilled on the land covered by this lease within the one year term of the lease, which expired

---

[3]The default of Amalgamated and of Thomson were entered at the beginning of the trial of the consolidated actions.

on June 27, 1956. In August, 1956, Reeves did some work on a well which had been drilled many years before. This work however was done with the understanding that negotiations for a new lease were to be commenced. The Lena Souza lease was assigned by Reeves to Valer by an instrument dated March 13, 1956. Reef Oil Company also had an interest in the Lena Souza lease but not of record.

In addition to the above, the trial court found that there was no production of oil or gas or other hydrocarbon at any time relevant to each of the leases; that except as otherwise noted above and the initial payment made, no sums have been paid, tendered or offered as to any of the leases; that all of the assignments and transfers were made maliciously and with intent to encumber and cloud the titles to the property, and without the consent of the lessors and in violation of the covenants against assignment in each of the leases; that in each instance, the lessees and purported assignees refused to quitclaim their interest on demand of the lessors; that oil and gas and other hydrocarbons were discovered in paying quantities on other land within a mile of the lessors' property in 1956 and because of the apparent outstanding interests of the assignees, the lessors lost valuable opportunities to lease their properties to other interested oil companies; that no notice was given under paragraph 21 of the leases; that such notice would have been an idle act.

From the above facts, which are not challenged on appeal, the trial court concluded that the 1954 Manuel Souza lease[4] expired by its own terms and by reason of the execution of the 1955 lease and the operations of the lessee thereunder; that the 1955 Manuel Souza lease[5] expired by its own terms, by the failure to make a timely payment of rent, by the abandonment of the lessees' interest therein, by the violation of the covenant against assignments, by breach of the implied covenant of good faith and fair dealing, and by reason of the failure to commence drilling operations for a second well within 120 days after the first; that the Norman Souza lease expired by its own terms; by the failure to make timely payment or tender of rent; by the abandonment of the holders of the lessees' interest therein, and by the violation of the covenant against assignments; that the Lena Souza lease[6] expired by its own

[4] Referred to by the trial court as the Reeves lease.
[5] Referred to by the trial court as the Valer lease.
[6] Referred to by the trial court as the Souza lease.

terms, by the failure to make timely payment or tender of rent, and by the violation of the covenant against assignments.

As indicated above, the only argument on appeal is that the trial court erred in concluding that each of the leases had terminated because no notice was given pursuant to paragraph 21 of the leases. This paragraph, substantially identical in each of the leases, provided:

"21. Upon the violation of any of the terms or conditions of this lease by the Lessee and the failure to begin to remedy the same within sixty days after written notice from the Lessor so to do, then, at the option of the Lessor, this lease shall forthwith cease and terminate, and all rights of the Lessee in and to said land be at an end, save and excepting twenty (20) acres surrounding each well producing or being drilled and in respect to which Lessee shall not be in default, and saving and excepting right-of-way necessary for Lessee's operations."

It is argued that the 60-day notice should have been given as to that portion of paragraph 5 of each of the leases which allows 120 days between drilling of the wells, controls and extends the printed habendum clause. There is no merit in this argument. The 120-day provision is expressly limited by the habendum as it clearly states thereafter "or until this lease is terminated." The argument is irrelevant here as in each instance the termination date of the habendum clause came after the 120-day period. The Reef-Souza Number 1 well dug on the Manuel Souza property was completed on August 30, 1955, and the 120-day period thereafter expired on December 28, 1955; the fixed term of the habendum clause of the lease expired on January 17, 1956. The Yates-Thunderbolt Number 1 well dug on the Norman Souza property, was abandoned on December 11, 1955; the 120-day period expired on April 9, 1956, the fixed term of the habendum clause on June 7, 1956.

It is well established that the habendum clause is the governing clause as to the terms of an oil and gas lease. (2 Summers on Oil & Gas, 2d ed., 1938, p. 170; see also *Moon* v. *Marker*, 26 Cal.App.2d 33 [78 P.2d 460]; *Macco Construction Co.* v. *Fickert*, 76 Cal.App.2d 295 [172 P.2d 951]; *Renner* v. *Huntington, etc. Oil & Gas Co.*, 39 Cal.2d 93 [244 P.2d 895]; *Stetson* v. *Orland Oil Syndicate, Ltd.*, 42 Cal.App.2d 139 [108 P.2d 463].)

In *Moon* v. *Marker*, 26 Cal.App.2d 33 [78 P.2d 460], the only well drilled by the lessee was abandoned seven months

before the end of the ten-year period of the lease. After the end of the period, the lessor served the lessee with notice to quit and commenced the action to recover possession. In upholding the lessor's right to possession, the court said at 36-37:

". . . The provision of the lease with respect to the production of oil or gas in paying quantities, was a condition precedent to the extension of the lease beyond the ten-year term thereof. The establishing of that condition as a fact became the only possible theory on which the appellants could claim any right of possession. (*Parks* v. *Sinai Oil & Gas Co.*, 83 Okl. 295 [201 P. 517]; *Roach* v. *Junction Oil & Gas Co.*, 72 Okl. 213 [179 P. 934]; 1 Thornton Oil & Gas, p. 153, sec. 91.) The evidence affirmatively shows that no gas or oil was produced in paying quantities. The appellants, therefore, became mere tenants of the land at sufferance after the termination of the lease on January 31, 1936. As such tenants at sufferance they were not entitled to notice to surrender possession of the land as a necessity prerequisite to the maintenance of this suit for possession thereof. (*Hauxhurst* v. *Lobree*, 38 Cal. 563; *Hull* v. *Laugharn*, 3 Cal.App.2d 310 [39 P.2d 478]; 15 Cal.Jur. 643, secs. 52, 53.) But notices to surrender possession of the land were, nevertheless, served on the appellants."

 The lease with the "and so long thereafter" phrase in the habendum clauses created a determinable fee interest in a profit *à prendre*. A determinable fee terminates upon the happening of the event named in the terms of the instrument which created the estate; no notice is required for, and no forfeiture results from, such termination. (*Renner* v. *Huntington, etc. Oil & Gas Co.*, 39 Cal.2d 93 [244 P.2d 895]; *Dabney* v. *Edwards*, 5 Cal.2d 1 [53 P.2d 962, 103 A.L.R. 822]; *Henck* v. *Lake Hemet Water Co.*, 9 Cal.2d 136 [69 P.2d 849]; *Macco Construction* v. *Fickert*, 76 Cal.App. 2d 295 [172 P.2d 951].) By the great weight of authority, the habendum clause dominates the period for which the lease shall run, so that unless it is properly modified by other provisions, all rights of the lessee cease at the expiration of the fixed time stated. At the expiration of the fixed time, if there is no production to extend it, the lease ends, not by forfeiture, but by its own terms.

In rejecting an argument similar to the appellants, in a situation where no rent had been paid or oil and gas produced, the court said in *Stetson* v. *Orland Oil Syndicate, Ltd.*, 42 Cal.App.2d 139, at 142-143 [108 P.2d 463]:

". . . Taking, therefore, the matter by its four corners, if the lessees did not commence a well and did not pay the delay money for further deferment they were no longer entitled to any rights under the lease; if they did waive further deferment by the actual commencement of a well and the period of the lease had expired and no production had been attained, they were likewise out.

"It is conceded that no deferment money was paid, and it is further conceded that no oil or gas was ever produced.

"Appellants further urge on this appeal that they were entitled to ninety days' notice of termination and a specification of the grounds claimed therefor in order that opportunity might be afforded to remedy any breach. From the statement of the case as made it is obvious that such a contention is without merit. In the first place, the lease imposed no obligation upon lessees to commence a well. Appellants had the option as to whether they would or would not commence a well and they had the right to defer any commencement until the last day of the lease. Therefore, there could have been no ninety-day period within which such a notice could have been given. No forfeiture of the lease is claimed by respondents. They stand squarely upon the fact that the lease has terminated by its own terms. Surely a forfeiture notice for breach of conditions would not be required to advise appellants that the term had ended. If the term ends there is nothing that appellants could do to remedy that situation. (See *Caswell* v. *Gardner*, 12 Cal.App.2d 597 [55 P.2d 1222] ; *C. M. Staub Shoe Co.* v. *Byrne*, 169 Cal. 122 [145 P. 1032].) We may further cite the case of *Williams* v. *Edge*, 192 Cal. 254 [219 P. 747], wherein it is stated that if the provision of the lease respecting the giving of notice of default had any operation in the case at bar it was waived by appellants by their contesting respondents' quiet title action upon the theory that they were not in default under the lease. This is followed in *Calhoma Oil Corp.* v. *Conniff*, 207 Cal. 648 [279 P. 771]."

As pointed out in *Richfield Oil Corp.* v. *Bloomfield*, 103 Cal.App.2d 589, 591 [229 P.2d 838], the rule of automatic termination is correct not only as a matter of proper and reasonable interpretation of the lease agreements but is based on sound considerations of authority. As practically the entire consideration depends on the undertaking, the duty to drill and explore is not treated as a mere covenant but as a

condition of the continued existence of the lease. A lessee should not be assisted and encouraged to hold a lease for speculative purposes only without making any attempt to develop the property's resources.

The failure of the lessees to pay rent is also a sufficient independent reason for the termination of the leases. In discussing similar types of provisions, the court said in *Richfield Oil* v. *Bloomfield, supra,* at 590 and 591:

"The lease involved is of that variety known to the industry and to legalistic authors as the 'unless' type, as distinguished from the 'drill or pay' type. (See 13 So.Cal.L.Rev. 393, 402-406.) Under a lease of the latter category the lessee covenants to commence drilling operations or perform the alternative obligation to pay rent. Under that type of lease a notice of default is indispensable when the writing contains a provision requiring notice to be given of default on the part of the lessee to drill or pay the stipulated rent and the lessor may by action enforce the payment of rent. Conversely, under the 'unless' lease, no such suit may be maintained. Failure to drill or pay the rent under that type of lease is merely a condition precedent whose occurrence unceremoniously terminates all rights of the lessee. But the latter's refusal either to drill or pay does not give rise to a cause of action against him. From the nature of the 'unless' type of lease, it carries within its own phraseology an automatic termination which clicks when the lessee fails to commence drilling operations within the time specified and also fails to exercise his privilege of paying delay rentals in advance. (*Wilcox* v. *West,* 45 Cal.App.2d 267, 270 [114 P.2d 39]; Summers, Oil and Gas, vol. 3, § 469, p. 163.)

"This is the rule even though the lease has a provision requiring notice of default to be given the lessee upon his breach of any term in the agreement. In the recent case of *Alexander* v. *Oates,* 100 Cal.App.2d 266 [223 P.2d 264], where the lease provisions were similar to those involved herein, it was pointed out that the covenant requiring written notice of default applied only to the lessee's failure to perform other conditions in the lease and that such notice clause was not inconsistent with a provision for automatic termination, citing *Carlisle* v. *Lady,* 109 Cal.App. 567 [293 P. 686]. In the latter decision a similar notice clause was held to refer to covenants to be performed by the lessee and not to a provision that drilling was to be commenced within a set period under

penalty of termination. (See *Stetson* v. *Orland Oil Syndicate, Ltd.*, 42 Cal.App.2d 139, 142 [108 P.2d 463].)"

Appellants here cite *Scheel* v. *Harr*, 27 Cal.App.2d 345 [80 P.2d 1035], where similar provisions were involved, but the court refused to hold that the lease had terminated in the absence of notice of default by the lessor. However, in that case, drilling operations were actually commenced within the limited time prescribed and the court viewed certain language in the limitation clause as a continuing covenant and separated from the condition of commencement of operations. *Wilcox* v. *West*, 45 Cal.App.2d 267 [114 P.2d 39], also cited by the appellants, relied on *Scheel* v. *Harr, supra,* and the failure of the trial court to make findings on all the issues. *Alphonzo E. Bell Corp.* v. *Listle,* 55 Cal.App.2d 300 [130 P.2d 251], also relied upon by the appellants, likewise turned on the insufficiency of the findings. It should be noted that in those as well as other authorities cited by the appellants, the good faith of the lessees was not a problem. The purpose of the notice clause to protect lessees from forfeiture of oil and gas leases is for the benefit of the lessee who, in good faith, goes forward in compliance with the terms of the lease. (*Romero* v. *Brewer,* 58 Cal.App.2d 759, 763-764 [137 P.2d 872].) In the instant case, the lessees admitted violations of the Public Resources Code.

There is ample authority to sustain the trial court's conclusions that the leases terminated because of the violation of the covenant against assignments (*Taylor* v. *Odell,* 50 Cal.App.2d 115 [122 P.2d 919] ; *People* v. *Klopstock,* 24 Cal.2d 897 [151 P.2d 641] ; Code of Civ. Proc., § 1161(4).) The notice requirement could have no application to conditions of covenants that could not be performed after the notice. (*Cf. Crowell* v. *City of Riverside,* 26 Cal.App.2d 566, 579 [80 P.2d 120] ; *Harloe* v. *Lambie,* 132 Cal. 133 [64 P. 88].) There is also ample authority to sustain the trial court's conclusion that the interests of the lessees automatically ceased because of the abandonment of their interests under the 1955 Manuel Souza lease and Norman's lease (*Hall* v. *Augur,* 82 Cal.App. 594 [256 P. 232] ; *Thornton* v. *Phelan,* 65 Cal.App. 480 [224 P. 259] ; *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427 [45 P.2d 183] ; *Banks* v. *Calstar Petroleum Co.,* 82 Cal.App.2d 789 [187 P.2d 127] ; *Rice* v. *Lee,* 44 Cal.App.2d 909 [113 P.2d 235]), and the failure to commence drilling operations within the time stated under Lena's lease (*Alexander* v. *Oates,* 100 Cal.App.2d 266

[223 P.2d 264]; *Ware* v. *Stafford,* 148 Cal.App.2d 840 [307 P.2d 950].)

We conclude that the judgments find ample support in the record before us.

Judgments affirmed.

Draper, J., and Shoemaker, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied September 14, 1960.