[Civ. No. 3808.   Third Appellate District.—November 15, 1930.]

F. M. CARLISLE et al., Respondents, v. W. E. LADY et al., Appellants.

William Ellis Lady, *in pro. per.,* for Appellants.

J. A. Chase and William M. Hiatt for Respondents.

MR. PRESIDING JUSTICE FINCH Delivered the Opinion of the Court.—The plaintiffs filed their complaint herein, in the usual form, to quiet their title to a section of land. The answer alleges that on May 3, 1922, the plaintiffs executed and delivered to F. G. Bogle "an oil and gas lease" of all but twenty acres of the land and that the defendants have acquired and are the owners of all the rights granted to Bogle by the terms of the lease in and to the south half of the section. Judgment was entered in favor of the plaintiffs quieting their title to all the lands in controversy and the defendants have appealed from the judgment.

The plaintiffs are husband and wife and the property in suit is a part of their community property. In the year 1921 the husband executed an oil and gas lease covering the whole of the land to Wm. H. Shry and L. E. Prestage. Thereafter, by mesne conveyances, E. M. Steele acquired whatever rights the lessees had under the lease. May 2, 1922, Mrs. Carlisle instituted an action to cancel the lease on the ground that she had not joined in the execution thereof. At the time of the delivery of the Bogle lease, Steele executed and delivered to the plaintiffs a quitclaim deed to the land, Mrs. Carlisle dismissed the aforesaid action and Bogle assigned to Steele all of his rights under the lease in and to the south half of the section of land. Although the court made no finding on the question, there is a possible inference from the evidence that the plaintiffs and Steele understood that the quitclaim deed was executed in part consideration for the Bogle lease and the assignment to Steele, and for the purposes of this opinion it will be assumed that such is the fact. Having reached that conclusion, the Shry lease may be dismissed from further consideration, because it can have no other bearing on the issues in the case.

The court found, on sufficient evidence, "that on the 7th day of October, 1923, the plaintiffs . . . signed and duly

acknowledged a lease and agreement with F. G. Bogle; that said lease and agreement was signed and acknowledged by F. G. Bogle on the 2nd day of November, 1923; that said lease and agreement was delivered and recorded on the 24th day of July, 1924''. A copy of the lease is then set out in full and a finding that the aforesaid assignment from Bogle to Steele was made. The court then, on evidence without substantial conflict, found as follows:

''That the defendants are assignees and successors in interest of E. M. Steele; that neither defendants nor F. G. Bogle nor E. M. Steele nor any successor in interest of E. M. Steele, nor any sublessee of F. G. Bogle, nor any successor in interest of F. G. Bogle, nor any successor in interest of any sublessee of F. G. Bogle, or E. M. Steeele nor any sublessee or assignee of either of them ever performed any of the conditions or obligations, nor any of the agreements, terms, conditions or obligations of said original lease required of the lessee in said original lease;

''That no rental provided by the terms of said original lease was ever paid to plaintiffs; that no well was ever drilled or ever commenced to be drilled on the land described in said original lease, or within the territorial limits provided in said lease, by F. G. Bogle, or by anyone holding any interest in said lease, or by any successor in interest of F. G. Bogle, or anyone claiming under F. G. Bogle;

''That neither F. G. Bogle nor anyone claiming under him ever entered upon the land described in said lease, or any land prescribed by the terms of said lease for the purpose of performing or complying with any of the terms of said lease; and the terms and conditions of said lease to be complied with by the lessees therein have not been complied with, performed or kept by anyone.''

The lease contains the following:

''For and in consideration of $10 by the lessee in hand paid to the lessor, receipt of which is hereby acknowledged, and in further consideration of the performance by the lessee, of the covenants and agreements hereinafter contained, the lessor has leased, let and demised, and by these presents does lease, let and demise unto the lessee, the lands hereinbefore described, with the sole and exclusive rights to the lessee, to drill for, produce, extract and take oil, gas, asphaltum and other hydro-carbon substances and water

from, and store the same upon said land, during the term hereinafter specified, . . .

"(a) The lessee shall hold said lands with the appurtenances for the period of 20 years from the date hereof, and so long thereafter, as oil, gas, asphaltum or other hydrocarbon substances are produced thereon and therefrom in paying quantities by the lessee, unless otherwise surrendered or forfeited by the lessee; and the lessee hereby leases, from the lessor the hereinbefore described lands for the purposes and term aforesaid and upon the consideration hereinafter set forth.

"(b) It is understood and agreed that this lease is executed by the lessor upon and subject to the condition that the lessee shall within 6 months from May 3, 1922, commence the drilling of a test well on said demised premises, or at some point within 2 miles from the exterior boundaries of the premises herein described with complete rig, and thereafter prosecute the drilling thereof with reasonable diligence and in good faith until oil, gas or other hydro-carbon substances are found in paying quantities by the lessee or until said well has been drilled to a depth of thirty-five hundred feet; provided, however, that said lessee may extend said period 3 months by paying to said lessor herein a cash rental of 50 cents per acre per month, monthly in advance. And provided further, that in the event the lessee does not commence the drilling of said test well within said additional 3 months, this lease shall *ipso facto* terminate.

"This lease shall be upon the further terms and conditions following, to-wit:

"1. In the event the lessee does not commence the drilling of a well for oil on the premises herein described, with complete standard or rotary rig, within 90 days from the completion of said test well, then and in that event the lessee shall pay to the lessor herein named a monthly cash rental for the premises herein described at the rate of two dollars per acre per month, monthly in advance but in no event, however, shall drilling be delayed on the premises herein leased for a period of more than 1 year from completion of the test well mentioned in Paragraph 'B' above.

"2. Lessee may at any time before the discovery of oil on the demised premises, quit-claim the said property to

the lessor, his successors or assigns and thereupon all rights and obligations of the parties hereto, one to the other, cease and determine. . . .

"25. The interest of the party of the second part under this indenture shall be subject to forfeiture only upon the conditions and in the manner herein set forth, to-wit: In case the lessee shall be in default in the performance of any covenant or agreement by him to be done or performed hereunder, and such default shall be of a kind curable with reasonable diligence within 30 days, and shall continue uncured for a period of exceeding 30 days, after he had had written notice of said default and the character thereof, or if the lessee shall not have begun in good faith to remedy any such default, within said period of 30 days after such notice, then and in such case, this lease shall become void at the option of the lessor and the lessee shall thereupon vacate said premises, . . . ''

The complaint in the action was filed January 28, 1927. The trial was commenced April 13, 1927, and completed in the following month, nearly three years after the lease was delivered. During all that time neither the lessee nor any of his assignees made any effort to perform the terms of the lease and none of them did anything to indicate an intention even to comply with its terms. ▪ Referring to the condition in paragraph (b) of the lease, requiring the lessee to commence the drilling of a test well within six months after May 3, 1922, appellants contend that since it was manifestly impossible to commence such drilling after the delivery of the lease on July 24, 1924, and within six months after May 3, 1922, the provisions of that paragraph "were not obligatory on anyone". Based on this argument, appellants state in their opening brief: "When the court found that the lease . . . was not delivered until July 24, 1924, by the same finding the court found there were no obligations to be performed by the lessee, and the lease would thereupon run for twenty years without the doing of any matter or thing." It is clear that the facts stated do not lead to any such inequitable result. Section 1441 of the Civil Code provides: "A condition in a contract, the fulfillment of which is impossible, . . . is void." This is only a legislative declaration of a rule of the common law. (*Vanderslice* v. *Hanks,* 3 Cal. 28, 42.) The rule

can mean only that such a condition is void to the extent that fulfillment is impossible. In case of a grant on condition that the grantee pay a note or bond on the day it falls due it would be absurd to hold that the grantee can hold the property conveyed and escape the obligation. to pay on the ground that the due date had already passed at the time the grant was executed. (*Hughes* v. *Edwards,* 9 Wheat. (U. S.) 489 [6 L. Ed. 142, see, also, Rose's U. S. Notes].) In a case analogous to this, where the grantor had prevented performance of a condition subsequent at the time specified in the condition, the court held, quoting from the syllabus: "Where the owner of land conveyed it to a society on condition subsequent that a building be erected thereon before a certain date, the fact that the grantor prevented the completion of the building by unwarranted claims of title would not authorize a judgment vesting the fee in the grantee unconditionally, but the condition should be performed within a reasonable time thereafter." (*Baker* v. *Women's Christian Temperance Union,* 57 App. Div. 290 [67 N. Y. Supp. 949].) The equitable rule applicable to this case is that the lessees were obligated to commence drilling within a reasonable time after the execution and delivery of the lease. (Civ. Code, sec. 1657.) This they utterly failed to do. Under the terms of such a lease, "the grantee cannot omit to drill and develop and hold the grant for speculative purposes purely". (*Hall* v. *Augur,* 82 Cal. App. 594, 600 [256 Pac. 232, 235].)

■ There is another. feature of the lease which is not discussed in the briefs. Clause number 2 releases the lessee from doing anything whatever and converts what would otherwise constitute a lease into a mere option, with no time expressed within which the option may be exercised, except that the lessee was to become bound by the terms of the lease upon the discovery of oil on the demised premises. It would be unreasonable to hold the lessors bound by the lease after the lessee and his assigns have failed for so long a time even to commence drilling or to do anything which would bind them to perform the terms of the lease. At the time of the execution of the lease other persons were drilling for oil on an adjoining section of land. A representative of the lessee prepared the lease. It was evidently designed to give the lessee all the benefits which would flow

from the discovery of oil on such adjoining land without incurring any obligation in the event of failure to discover oil thereon.

■ The provision of paragraph 25 of the lease requiring notice before declaring a forfeiture, clearly relates to the covenants of the lease and not to the condition set forth in paragraph (b). (*Taylor* v. *Hamilton*, 194 Cal. 768, 774 [230 Pac. 656].)

■ Appellants contend that the court erred in denying them permission to file an amended answer. The proposed amended answer is extremely long, made up largely of evidentiary matter. All material issues raised thereby were properly triable under the original answer, unless it be the alleged estoppel attempted to be set up in the proposed amended answer, and the defendants were permitted to attempt the proof of such estoppel, such proof, however, being insufficient to establish any element of an estoppel against the plaintiffs. The nearest approach to such proof is the testimony of a witness that, prior to the delivery of the lease, the assignment to Steele and the quitclaim deed, he saw a letter, signed he thought by both of the plaintiffs, although he was uncertain as to the signatures, in which it was stated that "the plaintiffs were satisfied with the progress of the work on the lease", and the witness testified, the several instruments were thereupon placed on record by him, who was the escrow-holder thereof. It does not appear to whom the letter was directed or the purpose thereof. Neither does it appear in what manner there could have been a compliance with the terms of a lease which at that time had not become effective by delivery.

The defendants offered in evidence a long affidavit signed by Steele, which follows closely the substance and the language of the proposed amended answer. Appellants claim that it was received in evidence while respondents contend to the contrary. While the record is not clear, it may be conceded, for the purposes of this opinion, that, by stipulation of the parties, such parts of the affidavit as are not hearsay were received in evidence. Excluding the hearsay parts of the affidavit, there is nothing therein which, with the other evidence relied on by the appellants, would justify findings and judgment in favor of the appellants.

The judgment is affirmed.