[Civ. No. 5526.   Third Appellate District.—March 21, 1936.]

CORA T. CASWELL et al., Appellants, v. GEORGE GARD-
NER, Trustee in Bankruptcy, etc., Respondent.

598

Mayock & Lester for Appellants.

Don S. Irwin for Respondent.

PULLEN, P. J.—This is an action to quiet title brought by the owners of the fee of certain oil lands against numerous defendants including George Gardner as trustee in bankruptcy of the South Consolidated Oil Company, a corporation, a bankrupt, who claims an interest therein.

In 1927, a lease was executed by William Caswell, Katherine Ellis and Pacific Southwest Trust and Savings Bank, the predecessors in interest of the present owners which lease by mesne conveyance on November 25, 1929, came into the possession of South Consolidated Oil Company, Ltd., a corporation. On August 9, 1930, this company entered into an agreement to sell and assign its interest in the lease to Wilburn Mayock. On August 13, 1930, four days after this assignment to Mayock, an involuntary petition in bankruptcy was filed against South Consolidated Oil Company, and on December 17, 1931, it was duly adjudicated a bankrupt; defendant was appointed trustee and on February 23, 1932, duly qualified as such. On October 21, 1930, and while the petition to adjudge South Consolidated Oil Company a bankrupt was pending, Mayock assigned his lease to Mason, Hertz and Murphy and they in turn assigned to Guaranty Oil Company, a corporation. Thereafter and on August 17, 1932, defendant as trustee in bankruptcy made written demand upon Guaranty Oil Company and Mayock, Mason, Hertz and Murphy to cure certain defaults under its lease within ten days. Defaults not having been cured, an order to show cause was issued returnable before the referee in bankruptcy, wherein they were directed to show cause why the terms of said agreement should not be enforced against them, and why they should not be ordered to reassign said lease and personal property to the trustee for the benefit of said estate. Following this order a notice was served upon the trustee by the Guaranty Oil Company designated "Notice of default and written demand to cure default" wherein it was represented that the bankrupt corporation had failed to furnish a policy of title insurance or to warrant clear and unincum-

bered title to the leasehold, and alleged that said lessee was not in default and that the covenants in the lease were in full force and effect.

Pending the hearing on these matters before the referee in bankruptcy, plaintiffs herein, as owners, made demand upon Guaranty Oil Company, then in possession, to quit and surrender the premises within ten days. After the expiration of the ten-day period the owners proceeded to the property and finding no one in possession and the premises abandoned, retook possession and thereafter on December 13, 1932, brought this action to quiet title against all persons claiming any interest in said property including defendant herein as trustee of South Consolidated Oil Company, a bankrupt. Thereafter on January 4, 1933, the referee, pursuant to the order to show cause, directed that the lease from South Consolidated Oil Company to Mayock be reassigned to the trustee in bankruptcy because of the failure of the lessee to pay to the trustee certain royalties specified in the lease. Thereupon Mayock assigned to Gardner, as trustee in bankruptcy, all of his right, title and interest in the lease, reciting, however, that he claimed no interest in said lease but made the assignment in compliance with said order of the referee.

It also appeared that after the plaintiffs had repossessed the leased property they entered into a new lease with Mayock and Lester, who formed a corporation known as Saratoga Oil Company to operate the property. Defendant trustee makes vigorous charges of fraud and collusion on the part of Mayock and Lester, claiming that they, acting as attorneys for the South Consolidated Oil Company, the bankrupt, and while Lester was a member of the board of directors of that corporation, had gained information which they used to their own advantage and to hinder, delay and defraud the creditors of the bankrupt, many of which charges the trial court found to be true. The court then found that the lease to South Consolidated Oil Company was not terminated and was still in full force and effect and passed as an asset to the trustee in bankruptcy. Whether the owners of the fee had a right to repossess the lands, appears to be the real issue here in dispute; the quarrel between counsel, and the charges and countercharges made during the trial, are not material here for a determination of the issues before us.

It is first to be remembered that plaintiffs herein are the owners of the real property, and the court has so found. It is not charged nor does the court find that they were parties to any misconduct nor were they in any way involved in any of the proceedings before the bankruptcy court, nor can any blame attach to them, if any in fact existed, on account of the conduct of attorneys for plaintiffs by reason of the fact that Lester and Mayock at an earlier date are claimed to have acted for or had been officers of the bankrupt corporation.

The original lease provided that it should terminate in the event oil was not produced in paying quantities within one year from the date of its execution. It is not disputed that oil was not produced within a year. It is also provided that the lease should terminate if the lessee failed to commence the drilling of any well required in the lease to be drilled within the specified time; time being of the essence of the contract. Again it is undisputed that the lessee and its successors failed to commence the drilling of wells within the time limit, or at all.

That the parties to a lease may agree upon a contingency that will bring a lease to an end before the expiration of the full term thereof is beyond question. It is what is commonly known as a conditional limitation, and it is such termination and limitation we are here considering. Respondent seems to contend that we are here dealing with a forfeiture and that the rules applicable thereto should be invoked, but in that he is in error.

In *C. M. Staub Shoe Co.* v. *Byrne*, 169 Cal. 122 [145 Pac. 1032], a lease for a term of years provided for its sooner termination on certain contingencies, one being if the premises were partially destroyed by fire so as to be untenantable, and another if the premises were damaged to such an extent it could not be repaired within sixty days. The premises were partially destroyed but the tenant desired to remain; the lessor contended, however, that the lease was terminated. The court there held: "The clause terminating the lease by certain contingencies does not declare a forfeiture. It fixes events having no relation to any act or default of the parties upon which it is agreed that the lease shall end."

In *Levin* v. *Pabst Brewing Co.*, 165 Cal. 168 [131 Pac. 118], the lease was to terminate if the municipal authorities ordered the premises torn down. Later such an order was

made but several years were granted within which the actual removal was to be accomplished. The court held that the lease terminated at the date of the order for removal and the occupancy thereafter was from month to month. This rule also finds support in the cases of *Pedro* v. *Potter*, 197 Cal. 751 [242 Pac. 926, 42 A. L. R. 1165], and *Pringle* v. *Wilson*, 156 Cal. 313 [104 Pac. 316, 24 L. R. A. (N. S.) 1090].

In point both as to the law and the facts is the case of *Hall* v. *Augur*, 82 Cal. App. 594 [256 Pac. 232]. The action there was to quiet title against the holder of an oil lease. The evidence discloses several assignments from the original lessee. The lease provided the lessee was to erect a derrick and commence drilling within thirty days thereafter, and to prosecute the same until oil was found in paying quantities or the well sunk to a depth at which further drilling would, in the opinion of the lessee, be unprofitable. There was no condition subsequent, no reentry clause, no forfeiture nor penalty clause contained in the lease nor were the leases canceled or abandoned in writing. The court said:

"The grantee cannot omit to drill and develop and hold the grant for speculative purposes purely. The duty to drill and develop the property upon the discovery of oil or gas in paying quantities is not to be regarded as a mere covenant, but in a case like this, where practically the whole consideration must depend upon the undertaking, it is to be treated as a condition precedent. (*Gadbury* v. *Ohio etc. Gas Co.*, 162 Ind. 9 [62 L. R. A. 895, 67 N. E. 259].) The rule that forfeitures are not favored in law does not apply to oil and gas leases." The court further saying: "Defendants could not revive said leases after their abandonment by assigning them to third parties. Besides, the evidence shows that no drilling was ever commenced by the assignees of the lessees. The attempted assignment of the leases did not affect the plaintiffs' declared forfeiture of the leases by their act in leasing to other parties. The plaintiffs had a right to forfeiture for conditions broken, not only as against the lessees, but as against any assignee of the lessees who might claim possession of the premises under them."

The cases of *Acme Oil & Mining Co.* v. *Williams*, 140 Cal. 681 [74 Pac. 296], and *Taylor* v. *Hamilton*, 194 Cal. 768 [230 Pac. 656], are likewise enlightening as to the extent the courts will go in protecting a lessor of oil property against a lessee who fails to diligently comply with the terms of his lease.

In the instant case there is no finding that the bankrupt South Consolidated Oil Company or its predecessors had performed the covenants of the lease required of them or that performance had been waived or prevented. ▮ In fact the undisputed evidence is to the effect the requirements as to drilling had never been performed and that the rentals had not been paid. Respondents having alleged performance which was denied by appellants, it is essential the trial court find upon that issue. (*Hanes* v. *Coffee,* 212 Cal. 777 [300 Pac. 963].)

▮ Respondents also claim that appellants had waived their right to claim a violation of the lease by the South Consolidated Oil Company or its predecessors because of their consent to the various assignments, but one answer at least to that contention is that the record does not show consent by plaintiffs to any of the various assignments.

It is also to be recalled that the present action was brought in December, 1932, at which time *lis pendens* was recorded giving notice to the world of the claims therein set forth, and it was not until some ten days thereafter the trustee made his demand upon plaintiffs as owners of the real property for possession thereof. ▮ Some few months prior thereto, however, the trustee in bankruptcy had by virtue of an order to show cause, elected to rely upon the lease between Mayock and his business associates and the bankrupt, South Consolidated Oil Company. The referee in bankruptcy, pursuant to said petition, ordered said lease from the oil company to Mayock canceled because of the failure of Mayock and his associates to comply with the terms of said agreement. The trustee thereupon having elected to recognize and stand upon the lease to the South Consolidated Oil Company, cannot now be heard to attack the validity thereof. That rule is set forth in section 2271 of Remington on Bankruptcy, where it is stated: ''Where a trustee knowing the facts has procured an order on the bankrupt for its surrender of the proceeds of an alleged fraudulent transfer still in his hands, the trustee will be held to have elected to have performed a transfer in a subsequent suit against the alleged fraudulent transferee.''

Other points are raised but we believe the foregoing is determinative of the matter. The trial court and counsel for respondents have devoted considerable attention to the

relationship between counsel for plaintiffs and the bankrupt, alleging conspiracy and fraud in their dealings, but we find nothing therein that justifies such conclusion.

In view of the foregoing, we believe the trial court erred. The judgment should be reversed, and it is so ordered.

Thompson, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 18, 1936.