[Civ. No. 2791. Fourth Dist. Nov. 26, 1941.]

FLORA E. REHART et al., Respondents, v. WINFRED WILLIAM KLOSSNER, Appellant.

Alfred Siemon and Bennett Siemon for Appellant.

J. A. Galvin and Henry L. Knoop for Respondents.

MARKS, J.—This is an appeal from a judgment quieting plaintiffs' title to real property in Ventura County. It is a companion case to *Rehart* v. *Klossner, post,* p. 46, the opinion in which is this day filed.

C. V. Rehart and Flora E. Rehart are the common source of title of the parties. On January 15, 1934, they executed an oil lease with defendant under which he now claims.

At the commencement of the trial ownership was stipulated as follows: "Flora E. Rehart has an undivided one-fourth interest; Georgia Anna Scott, an undivided one-fourth interest; Stella M. Rehart, as Executrix under the last will of Ray L. Rehart, has become, subsequently to the filing of this suit, the owner of an undivided one-fourth interest. The remaining one-fourth interest has not yet been distributed, and is in Stella M. Rehart as Executrix under the last will of Ray L. Rehart." While it is not entirely clear from the record, it would seem that the other plaintiffs are either heirs at

law or devisees under the will of Ray L. Rehart, or otherwise have some interest in the property through heirship of a decedent whose estate was not distributed.

Defendant now urges that there has been a misjoinder of parties plaintiff and that the guardian of the minors did not have authority from the probate court to join in this action and therefore had no legal capacity to sue.

Had a demurrer been interposed on the ground of misjoinder of parties plaintiff it seemingly should have been sustained. The record shows no demurrer. Under the stipulation it appears that the entire title to the property was vested in Flora E. Rehart, Georgia Anna Scott, Stella M. Rehart and the Estate of Ray L. Rehart, deceased, represented by his executrix. That being so, defendant suffered no prejudice by the presence of the other plaintiffs in the case because if the owners were entitled to have their titles quieted against defendant he would have remaining no interest in the property. If the judgment gives other plaintiffs an interest in it and if it is erroneous to that extent, the true owners and not defendant are prejudiced by the error and they have not appealed.

We need not consider the right of a guardian to bring an action to quiet the title to the ward's property without first obtaining leave of court to do so. Here the estate of Ray L. Rehart had not been distributed and the executrix brought and had the lawful right to bring this action which is sufficient for the purposes of this case.

Defendant, under various headings and in several different forms, urges that plaintiffs may not recover here because no notice of forfeiture of the lease was given as required by the terms of the lease, as he construes it. Plaintiffs maintain that no notice of forfeiture was required.

The lease is dated January 15, 1934. It is for a term of twenty years and as long thereafter as oil in paying quantities can be produced from the leased premises, so the lessee acquired an interest in the real property under it. (*Callahan* v. *Martin,* 3 Cal. (2d) 110 [43 Pac. (2d) 788, 101 A. L. R. 871].) The lessee was required to start drilling a well by April 5, 1934, and to continue drilling in good faith until a depth of forty-five hundred feet had been reached, unless oil in paying quantities had been found at a lesser depth. There

were other drilling requirements not necessary to mention here.

Time was made the essence of the contract and the lessors were given the option of terminating the lease on the breach of its conditions. The right to postpone the commencement of drilling the first well was given to the lessee by his paying to the lessors $150 a month in advance commencing on April 5, 1934, and ending with the payment on October 5, 1934, and $250 per month in advance thereafter, no extension being obtainable after October 5, 1935. If the first well was not started before that date the lease was automatically terminated without any action on the part of the lessors.

The paragraph giving rise to this controversy reads as follows:

"In the event that there shall be a breach of or failure to comply with any other term, conditions, covenant, or obligation hereof by the Lessee, the Lessor shall before declaring a forfeiture, give the Lessee a written notice specifying the particulars of such breach or failure, and if the breach or failure is of such character that it can be made good by the Lessee, and the Lessee does begin in good faith to make good the same within thirty (30) days after the service of such notice, and diligently continues the same to completion, or after the expiration of said performance period, after any such default, shall pay to the Lessor the sum of Two Hundred Fifty ($250.00) Dollars, per month in advance, such breach or failure shall be executed (excused), for not longer however, than an aggregate of twelve (12) months after the occurrence of such breach or failure."

About March 15, 1935, defendant made a sublease on three hundred acres of the leased property to R. E. McClelland. He spudded in a well on it on July 18, 1935, and drilled to a depth of 450 feet. In June, 1936, McClelland assigned his sublease to Brewers, who worked on or around the well until the latter part of December, 1936, but did not deepen it. Defendant worked in or around the well in June and July, 1937, but did not deepen it and it was never drilled to a depth of more than 450 feet.

One of the plaintiffs testified that three of the rental checks that were given her in 1936 were not paid when presented to the bank on which they were drawn and that thereafter de-

fendant paid $1150; that there was no rental paid after June 14, 1937.

This action was instituted on February 17, 1939. No notice of default or of the forfeiture of the lease was given prior to that time.

█ Defendant contends that as the drilling of the first well was actually started before October, 1935, and prosecuted to a depth of 450 feet, the provisions of the lease under which it would have been terminated automatically for failure to start drilling the first well never became operative. We agree with this argument.

He argues that the quoted paragraph providing for forfeiture for ''failure to comply with any other term, conditions, covenant, or obligation'' of the lease required a notice of any default to be given him and gave him thirty days after notice to correct his breach; that as no notice of default was given him the lease was not cancelled; that the closing phrases of the quoted paragraph are modified by the prior requirement for notice and that the twelve months' limitation on time could not commence to run until notice was served, and as no notice was served the twelve months had not expired when this action was filed.

Plaintiffs argue that the phrase ''such breach or failure shall be executed (excused), for not longer, however, than an aggregate of twelve (12) months after the occurrence of such breach'' is complete in itself and places an absolute limit of twelve months after default in which to correct it without regard to notice so that in twelve months after default the lease was terminated by the default and the failure to rectify it within that time.

█ The question of the correct construction of the paragraph is a close one. The trial court adopted the one placed on it by plaintiffs. However, we believe the judgment must be affirmed on another ground.

The trial court found that there had been no drilling on the leased lands for more than two years and that defendant had failed to pay the rentals. These findings show an abandonment of the lease and the leased property sufficient to support the judgment.

In the case of *Hall* v. *Augur,* 82 Cal. App. 594 [256 Pac. 232], the oil lease in question there was dated May 5, 1921, and became effective not later than May 30, 1921. There was

no forfeiture clause in the lease. The suit to quiet title against it was filed on May 22, 1922, as no drilling operations had been started. In holding that there had been an abandonment, the court said:

"Abandonment will be more readily found in the case of oil and gas leases than in most other cases. In *Harris* v. *Riggs*, 63 Ind. App. 201 [112 N. E. 36], it is said: 'Such a lease may be abandoned, and when once abandoned by the lessee, he cannot thereafter claim or enforce any right thereunder without first securing consent of the lessor or a renewal of the lease. (*Gadbury* v. *Ohio etc. Co.*, 162 Ind. 9, 16 [62 L. R. A. 895, 67 N. E. 259]; *Island Coal Co.* v. *Combs*, 152 Ind. 379, 387 [53 N. E. 452]; *Ohio Oil Co.* v. *Detamore*, 165 Ind. 243, 252 [73 N. E. 906]; *Bartley* v. *Phillips*, 165 Pa. 325 [30 Atl. 842]; *Calhoon* v. *Neely*, 201 Pa. 97 [50 Atl. 967]; *Lowther Oil Co.* v. *Miller etc. Co.*, 53 W. Va. 501 [97 Am. St. Rep. 1027, 44 S. E. 433, 435]; *Van Meter* v. *Chicago etc. Co.*, 88 Iowa 92 [55 N. W. 108]; 1 Cor. Jur., p. 5 et seq.; 1 Cyc., p. 4 et seq.; Thornton's Law of Oil & Gas, sec. 137.)

" 'It has been held and supported by sound reason that abandonment may be more readily found in cases of oil and gas leases than in most other instances. The rights granted under such leases are for exploration and development. The title or interest granted is inchoate until oil or gas is found in quantities warranting operation, and courts will not permit the lessee to fail in development and hold the lease for speculative or other purposes, except in strict compliance with his contract for a valuable and sufficient consideration other than such development. (*Gadbury* v. *Ohio etc. Co.*, 162 Ind. 14 [62 L. R. A. 895, 67 N. E. 259]; *Lowther* v. *Miller etc. Co.*, *supra*; *Huggins* v. *Daley*, 99 Fed. 606 [48 L. R. A. 320, 325, 40 C. C. A. 12]; *Dittman* v. *Keller*, 55 Ind. App. 448, 451 [104 N. E. 40]; *Risch* v. *Burch*, 175 Ind. 621, 627 [95 N. E. 123]; *Dill* v. *Fraze*, 169 Ind. 53, 57 [79 N. E. 971]; *Ramage* v. *Wilson*, 45 Ind. App. 599, 604 [88 N. E. 862].)'

"We believe the evidence was sufficient to support the finding of fact by the trial court that the defendants abandoned whatever right, title, or interest they or either of them had in and to such lease prior to the assignment of said lease to the Interstate Oil Corporation." (See, also, *Rice* v. *Lee*, 44 Cal. App. (2d) 909 [113 Pac. (2d) 235]; *Carlisle* v. *Lady*, 109 Cal. App. 567 [293 Pac. 686]; *Garrison* v. *Hogan*, 112

Cal. App. 525 [297 Pac. 87]; *Caswell* v. *Gardner,* 12 Cal. App. (2d) 597 [55 Pac. (2d) 1222].)

Under the rules announced in the foregoing cases the evidence here shows such abandonment that the judgment must be affirmed.

■ Defendant seeks to escape from this conclusion by pointing to a paragraph of the lease wherein it is provided that drilling operations required in the lease may be suspended by the lessee when such operations are prevented by the elements, and points to his own testimony to the effect that a great storm on March 1, 1938, caused a flood that washed out all roads on and to the leased property so that he could not haul in drilling equipment until April, 1939.

On the other hand, a witness for plaintiffs contradicted this evidence. He testified that from September to December 31, 1938, the roads were open; that they were closed for about one week in January, 1939. This evidence supports the finding that the failure to pay rentals or to drill was not caused by an act of God.

Judgment affirmed.

Barnard, P. J., and West, J. *pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 21, 1942. Houser, J., and Carter, J., voted for a hearing.